BETTIS *v.* STATE.

·Opinion delivered April 14, 1924.

1. INDICTMENT AND INFORMATION—SPECIAL TERM OF COURT.—Where defendants were indicted at a special term of court, under Crawford & Moses' Dig., §§ 2211-2217, the act to prevent mob violence, it was not necessary for the circuit judge to give the notice of the special term required by §§ 2218-2223, *Id.*, relating to the holding of special terms to try persons in jail.

2. COURTS—SPECIAL TERM—RECITALS OF ORDER.—An order convening a special term of the circuit court, under Crawford & Moses' Dig., §§ 2211-2217, sufficiently showed that the sheriff requested the call for the special term where it recited that the necessity for the special term appeared to the judge by notice from the sheriff.

3. COURTS—SPECIAL TERM.—A call for a special term of court, under Crawford & Moses' Dig., §§ 2211-2217, enacted to prevent mob violence against persons charged with crime, is not defective in failing to designate the persons so charged, or in failing to contain a direction to summon a petit jury.

4. CRIMINAL LAW—WAIVER OF ARRAIGNMENT AND PLEA.—Where persons indicted for crime announce that they are ready for trial and go to trial without formal arraignment and plea, they waive their right thereto.

5. CRIMINAL LAW—IMPANELMENT OF JURY.—A recital in the record in a criminal case that the jury were selected from the regular panel and sworn according to law is sufficient to show that the petit jury were duly impaneled.

6. CRIMINAL LAW—COPY OF INDICTMENT—WAIVER.—Where persons indicted for crime appeared in court by their attorney announced ready for trial, this was tantamount to a plea of not guilty and a waiver of their right, under Crawford & Moses' Dig., § 3052, to be served with a copy of the indictment 48 hours before arraignment.

7. HOMICIDE—VERDICT DESIGNATING DEGREE.—A verdict in a prosecution for murder in the first degree finding defendant guilty and fixing his punishment at death, was a sufficient finding of guilt of murder in the first degree.

Appeal from Crawford Circuit Court; *James Cochran,* Judge; affirmed.

*Scipio A. Jones,* for appellants.

*J. S. Utley,* Attorney General, and *John L. Carter,* Assistant, for appellee.

WOOD, J. This is an appeal from a judgment of the Crawford County Circuit Court sentencing the appellants to death. The appellants were jointly indicted, tried and convicted at a special term of the Crawford Circuit Court, which was convened by the judge of that court in pursuance of the following order: "It appearing to the judge of the 15th Judicial (circuit), by notice from Sheriff A. D. Maxey, Dave Partain, prosecuting attorney, and from the representations of W. J. Martin, mayor of Van Buren, and other citizens of Crawford County, that the crime of rape and murder has been committed in Crawford County, and that the passions of the people of said county are thoroughly aroused, and that the sheriff and mayor of Van Buren and other citizens are apprehensive and believe that mob violence will be committed, and, upon due consideration of said notice from the sheriff and reports and representations of the mayor and other citizens of same condition in said county of Crawford, and finding that said apprehension and belief of the sheriff and other citizens are well founded, and in order to avoid said apprehended mob violence, I therefore, as judge of the said district, call a special term of the Crawford Circuit Court, to convene at one o'clock on the 1st day of January, 1924, to examine into said charges of rape and murder, and the sheriff of Crawford County is ordered and directed to summon from the electors of Crawford County sixteen good and lawful citizens, to serve as grand jurors at said special term of said circuit court, and the clerk of said Crawford Circuit Court is directed to spread this order upon the criminal records of said court and to issue a *venire facias* for said grand jury to the sheriff of this county. The judge further finds that said special term of the Crawford Circuit Court will not conflict with any other regular or adjourned court of the 15th Judicial District.

"Given under my hand this 29th day of December, 1923. Jas. Cochran, Judge."

The court convened on the day and hour appointed, and the record shows that the sheriff returned a list of grand jurors to serve at the special term, and that the grand jury was duly impaneled, and returned into court the indictments upon which the appellants were separately tried and convicted. The indictments were valid.

The appellants moved to quash the indictments on the following grounds: "First, because there was no order made out by the judge and transmitted by him to the clerk of the court, and by him entered on the records of the court, setting out that there was some person confined in jail, who might be tried upon some criminal charge, and naming the party. Second, that said order was not filed and entered of record ten days before the commence-ment of the term." The court overruled the motion.

This presents the first ground of appellants' motion for a new trial. Section 2211 of Crawford & Moses' Digest provides: "Whenever the crime of rape, attempt to commit rape, murder, or any other crime calculated to arouse the passions of the people to an extent that the sheriff of the county apprehends and believes that mob violence will be committed within the State of Arkansas, it shall be the duty of the sheriff of the county in which the crime of rape, murder or any other crime herein described shall have been committed, to notify the judge of the circuit or district including such county of the facts in the case, and to request such judge to call a special term of court in order that the person or persons charged with such crime or crimes may be brought to an imme-diate trial." Act of May 17, 1909.

Section 2212 provides: "It shall be the duty of such circuit judge, upon receipt of such notice and request from such sheriff, and upon due consideration of the sub-ject, and upon finding that the apprehension and belief of the sheriff are well founded, to call a special term of his court, impanel a special grand jury, and provide all the necessary judicial machinery for the legal trial of the person or persons charged with the crime or crimes above designated, such trial to begin within ten days from the

receipt, by such judge, of such notice from the sheriff, as herein provided.''

The above sections are parts of ''An act to prevent mob violence or lynching within the State of Arkansas,'' which was approved May 17, 1909.

The special term of the court at which the appellants were convicted was called under the authority of the above act, under §§ 2211-2217, inclusive, of Crawford & Moses' Digest, and not under the authority of §§ 2218-2223, inclusive, which are a part of the Revised Statutes providing for the holding of special terms of court to try persons in jail. The two statutes, as indicated by their titles, were enacted for different purposes, and the proceeding under them is entirely different.

The appellants contend that the order of the court calling the special term does not show any request from the sheriff that the special term be called. In this the appellants are mistaken, for the order begins: ''It appearing to the judge of the 15th Judicial (Circuit), by notice from Sheriff A. D. Maxey.'' This recital is sufficient to show that the sheriff requested the call. The statute makes it the duty of the sheriff, if he apprehends violence, to notify the judge of the circuit, and the recital above shows that the circuit judge was notified by the sheriff.

The appellants next contend that they were not named as those to be tried at such special term. The statute does not require that the person or persons charged with the crime shall be designated by name in the call for a special term. The object of this law is to prevent mob violence and to expedite an inquiry through the court in order to bring to a speedy trial the person or persons charged with crimes of the character mentioned. The person or persons so charged may or may not be in jail. Their names may not be known to the sheriff, and it might be impossible for the sheriff, in notifying the circuit judge of the facts in the case and requesting the special term, to name the person or persons charged with the crime or crimes mentioned. The outstanding purpose

of the statute is to have an expeditious inquiry made into the facts, so that persons charged with crime may have an immediate trial, according to law, in order to counter- act the mob spirit and to prevent those whose passions are aroused by the heinous character of the offenses from resorting to violence and thus preventing the due course of law. It is not essential to the jurisdiction of the judge, under this statute, to call a special term, that the sheriff, in his notice and request, should give him the names of the parties charged. Such a requirement might involve an impossibility, and thus thwart the wise pur- pose of the law to bring on an immediate trial.

Appellants urge that the call was defective because it contained no direction for the summoning of a petit jury. But this is not one of the jurisdictional require- ments of the statute. It is not necessary that the order summoning the petit jury should be embraced in the call for the special term. This is so for the reason that it cannot be known in advance whether the grand jury will return indictments; and to issue a *venire facias* for a petit jury before indictments are returned, and when they might not be returned at all, would be causing the officials unnecessary labor and the county unnecessary expense. The statute expressly empowers the court to provide all necessary judicial machinery for the legal trial, which includes the summoning of a petit jury. The summoning of such jury becomes necessary only after the indictments have been returned, and the due and proper course is not to have a *venire facias* for same until the indictments are returned.

The appellants next contend that the record does not show that the appellants were arraigned, nor that they waived arraignment. The record recites: "On this day, this cause coming on to be heard, comes the State of Arkansas by her prosecuting attorney, Dave Partain, and comes the defendant, in person and by his attorney, W. H. Neal, and, both parties announcing ready for trial, the following jury were selected from the regular panel (nam- ing them), and sworn according to law to try the cause," etc.

In *Hayden* v. *State,* 55 Ark. 342, we held (quoting syllabus): "Where no prejudice appears upon the record, a conviction of a felony will not be set aside because the defendant was tried without arraignment or plea, if the cause was treated as at issue upon the plea of not guilty." See cases there cited. By announcing ready for trial and going to trial, just as if there had been a formal arraignment and a plea of not guilty entered, the appellants waived their right to have such formal arraignment and plea entered before the trial commenced. *Davidson* v. *State,* 108 Ark. 201, and cases there cited. See also *Brewer* v. *State,* 72 Ark. 151.

The appellants contend that the record is silent as to where the petit jurors came from and how this jury was impaneled. The appellants are mistaken in this contention. The record recites that "the following jury were selected from the regular panel (naming twelve persons) and sworn according to law to try the cause." This recital is sufficient to show that the petit jury was duly impaneled to try the cause. It is wholly immaterial as to what portion of the county they came from.

It· is next contended that the record does not show that the indictments were served forty-eight hours before arraignment, as provided in § 3052 of Crawford & Moses' Digest. In *Lee* v. *State,* 145 Ark. 75-78, we said: "This section is mandatory, and, had appellant objected, he could not have been arraigned until the expiration of forty-eight hours after the delivery of a copy of the indictment to him." The record in this case shows that "on January 1, 1924, at the hour of 9 o'clock P. M., the prisoners were brought into court and informed of the nature of the indictments against them, and the clerk, by order of the court, delivered to each of them a true copy of the indictment." The record further shows that motions were filed in open court on the 5th of January, 1924, to quash the indictments. These entries show that four days elapsed between the time when the indictments were served on the appellants and the time when they filed their motions to quash the same. These entries

clearly show that the appellants were furnished with a copy of the indictment in compliance with the statute. But, even if the statute had not been complied with, the appellants, as we have seen, appeared in court in person, and, by their attorney, announced ready for trial. This was tantamount to a plea of not guilty, and was a waiver of their right under § 3052, *supra.*

It is argued, in the last place, that the verdict in the case of appellant Ruck was so defective that no judgment could be rendered upon it. The verdict in the case of Ruck was as follows: ''We, the jury, find the defendant guilty and fix his punishment at death.'' In the case of *Banks* v. *State,* 143 Ark. 156, the form of the verdict was as follows: ''We, the jury, find the defendants (naming them) guilty as charged in the indictment.'' In that case we held that the form of the verdict was fatally defective because it did not find the degree of murder. In that case we said: ''The statute expressly requires the jury to ascertain the degree in all cases of murder. Its terms are imperative. The court has uniformly construed it to be mandatory, and, as before stated, it has become a fixed part of our criminal jurisprudence.'' Verdicts that are silent as to the degree are imperfect and void, because it is impossible for the court to determine from such a verdict what punishment the jury intend to inflict upon the accused, and therefore impossible for the court to pronounce such a judgment on such a verdict, because the punishment had not been fixed by the jury. But such is not the case at all where the jury returns a verdict of guilty and fixes a punishment which as clearly indicates the degree of murder as if the degree had been expressly named in the verdict.

Here the jury in the Ruck case did not expressly name the degree of murder in its verdict of which it found Ruck guilty, but it found him guilty and fixed his punishment at death, thus showing that they found and intended to find him guilty of murder in the first degree, for murder in the second degree is not punished by death.

There are no bills of exceptions in the cases, and the presumption therefore must be indulged that the proof justified the finding of appellants guilty of murder in the first degree, and that the court correctly instructed the jury concerning the punishment attached to this degree of homicide, as well as the other degrees included in the indictment which may have been at issue under the facts.

After a careful consideration of the whole record we find no reversible error in the judgments, and the same are therefore affirmed.